UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| Thomas E. Perez, SECRETARY OF LABOR, <br> United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> BRIDGEPORT HEALTH CARE CENTER, INC. <br> and CHAIM STERN, Individually, <br><br> Defendants. | \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* CIVIL ACTION NO. <br> \* <br> \* <br> \* <br> \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff, Secretary of Labor, United States Department of Labor (the "Secretary"), hereby alleges:

1.  This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), 29 U.S.C. § 1001 et seq., as amended. The Secretary brings this action pursuant to ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), to enforce the provisions of Title I of ERISA, obtain appropriate relief in order to redress violations, and enjoin acts and practices that violate the provisions of that Title.

### I. JURISDICTION AND VENUE

2.  Jurisdiction is established pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

3.  Venue in this judicial district is established pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). Defendants Bridgeport Health Care Center, Inc. ("Bridgeport Health") and

1

Chaim Stern ("Stern") have a regular place of business and transact substantial business on an ongoing basis in this judicial district.

## II.   DEFENDANTS

4. Bridgeport Health is and has been, at all relevant times from January 3, 2011 to the present (the "pertinent period"), an employer within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5).

5. During the pertinent period, Bridgeport Health is and has been a corporation with an office and place of business at 600 Bond Street, Bridgeport, Connecticut 06610.

6. During the pertinent period, Bridgeport Health is and has been the operating entity of Bridgeport Health Care Center and Bridgeport Manor, two nursing homes on the same property in Bridgeport, Connecticut.

7. During the pertinent period, Stern is and has been the Trustee of the Bridgeport Health Care Center, Inc. Retirement Plan (the "Plan"), Chief Financial Officer of Bridgeport Health, Chief Operating Officer of Bridgeport Health, and Nursing Home Administrator of Bridgeport Health.

8. During the pertinent period, Bridgeport Health sponsored the Plan, an employee pension benefit plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), which is subject to coverage under the Act pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

9. The Plan was designed to provide retirement benefits for the exclusive benefit of its participants, employees of Bridgeport Health, and their beneficiaries. Employer contributions and amounts withheld from employee paychecks as contributions to the Plan, in accordance with each participant's election, fund the Plan.

10. During the pertinent period, Bridgeport Health is and has been the Plan Sponsor of the Plan, as defined by ERISA § 3(16)(B)(i), 29 U.S.C. § 1002(16)(B)(i), and the Plan Administrator of the Plan, as defined by ERISA § 3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i).

11. During the pertinent period, Bridgeport Health, acting as Plan Administrator of the Plan, exercised discretionary authority or discretionary control respecting the management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and had discretionary authority or discretionary responsibility in the administration of the Plan. Therefore, Bridgeport Health is and has been, during the pertinent period, a fiduciary to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

12. During the pertinent period, Bridgeport Health, as a fiduciary of the Plan and employer of employees covered by the Plan, is and has been a party-in-interest within the meaning of ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

13. During the pertinent period, Stern is and has been the Trustee of the Plan, and has acted on behalf of Bridgeport Health as the Plan Administrator of the Plan by being the sole decision-maker for the Plan. Stern assures the Plan receives all funds due, determines where Plan assets should be kept and invested, and approves all distributions, among other things. Stern has check signing and fund transfer authority for the Plan. As such, Stern exercised discretionary authority or discretionary control respecting the management of the Plan, exercised authority or control respecting the management or disposition of the Plan's assets, and had discretionary authority or discretionary responsibility in the administration of the Plan. Therefore, Stern is and has been, during the pertinent period, a fiduciary with respect to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

14. During the pertinent period, Stern, as a fiduciary of the Plan, Chief Financial Officer of Bridgeport Health, Chief Operating Officer of Bridgeport Health, and Nursing Home Administrator of Bridgeport Health, is and has been a party-in-interest with respect to the Plan within the meaning of ERISA §§ 3(14)(A) and (H), 29 U.S.C. §§ 1002(14)(A) and (H).

### III.  RELATED ENTITY

15. Em Kol Chai was incorporated as a New York religious corporation on December 6, 2002. Em Kol Chai's Certificate of Incorporation lists Stern as President and Trustee. Chaim L. Rosenberg ("Rosenberg") is listed as Vice-President and Trustee. Chaim M. Markowitz ("Markowitz") is listed as Secretary-Treasurer and Trustee. Em Kol Chai's principal place of business is listed as 4321 17th Avenue, Brooklyn, New York 11204.

16. In October 2003, the Internal Revenue Service ("IRS") granted Em Kol Chai an exemption from federal income tax under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).

17. Em Kol Chai's Signature Card for an account at People's United Bank dated May 14, 2008 lists Stern as President and Treasurer of Em Kol Chai. The Signature Card also lists Markowitz as Secretary of Em Kol Chai. The Signature Card lists Em Kol Chai's address as 600 Bond Street, Bridgeport, Connecticut 06610, the same address as Bridgeport Health. Both Stern and Markowitz signed the Signature Card.

18. Bank account statements for Em Kol Chai's account at People's United Bank are addressed as follows: Em Kol Chai c/o Chaim Stern, 600 Bond Street, Bridgeport, Connecticut 06610.

19. During the pertinent period, Stern had both check signing and fund transfer authority for Em Kol Chai and exercised that authority on multiple occasions.

## IV.   DEFENDANTS VIOLATED ERISA

20.   During the pertinent period, Defendants were responsible for receiving and collecting any and all monies due to the Plan and for properly managing the assets of the Plan.

21.   Employer contributions and employee contributions deposited in Plan accounts are Plan assets.

### A.   Transfers of Plan Assets to Bridgeport Health, Stern, and Em Kol Chai

22.   During the pertinent period, Defendants diverted an undetermined amount of Plan assets to Bridgeport Health, Stern, and Em Kol Chai through numerous transfers.

23.   Examples of such transfers of Plan assets include, but are not limited to:

   a.   On January 3, 2011, Defendants transferred $800,000 in Plan assets to Bridgeport Manor, a Bridgeport Health entity as described above.[1]  On January 3, 2011, Bridgeport Manor transferred $900,000 to Em Kol Chai, which had a balance of negative (-) $868,561.68.

   b.   On January 31, 2011, Defendants transferred $1,200,000 in Plan assets to Em Kol Chai, which had a balance of only $11,974.99.  On January 31, 2011, Em Kol Chai transferred $1,125,000 to Bridgeport Manor.  On January 31, 2011, Bridgeport Manor transferred $1,000,000 back to the Plan.

   c.   On February 22, 2011, Defendants transferred $200,000 in Plan assets to Em Kol Chai, which had a balance of $77,500.66.  On February 22, 2011, Em Kol Chai transferred $100,000 to Toner Co. with an address of 17 West 9th Street, Brooklyn, New York.  Em Kol Chai also transferred $100,000 to Bridgeport Manor and $60,000 to an unknown entity.

---

[1] References to Bridgeport Manor are to an account listed as Bridgeport Health Care Center Inc. dba Bridgeport Manor.

5

   d. On February 24, 2011, Defendants transferred $150,000 in Plan assets to Bridgeport Manor, which had a balance of $102,775.81.  On February 24, 2011, Bridgeport Manor transferred $202,723.07 to Bridgeport Health.

   e. On March 14, 2011, Defendants transferred $100,000 in Plan assets to Em Kol Chai, which had a balance of $25,124.78.  On March 14, 2011, Em Kol Chai transferred $60,000 to Toner Co. and $30,000 to an unknown entity.

   f. On March 21, 2011, Defendants transferred $100,000 in Plan assets to Em Kol Chai, which had a balance of $35,271.78.  On March 22, 2011, Em Kol Chai paid $65,000 to the American Friends of Viznitz in Israel by check.  American Friends of Viznitz in Israel is registered as a public charity with the IRS and has an address of 600 Bond Street, Bridgeport Connecticut, the same address as Bridgeport Health.  Upon information and belief, Stern has been an officer of American Friends of Viznitz in Israel.  On March 22, 2011, Defendants transferred an additional $100,000 and $75,000 in Plan assets to Em Kol Chai.  On March 22, 2011, Em Kol Chai transferred $130,000 to an entity identified as Dakota Trading and $75,000 to Secure Wireless Inc. with an address of 1544 East 13th Street, Brooklyn, New York.

   g. On March 31, 2011, Defendants transferred $440,000 in Plan assets to Em Kol Chai, which had a balance of $41,111.78.  On March 31, 2011, Em Kol Chai transferred $422,000 to the American Friends of Viznitz in Israel.

   h. On April 7, 2011, Defendants transferred $342,900 in Plan assets to Bridgeport Manor.  On April 7 and 8, 2011, Bridgeport Manor made several transfers including, but not limited to, transfers of $175,000 and $56,000 to Bridgeport Health.  At the end of April 8, 2011, Bridgeport Manor had a balance of only $4,337.03.  After receiving deposits from April 11 through 13, 2011, Bridgeport Manor transferred $342,900 back to the Plan on April 13, 2011.

   i. On April 14, 2011, Defendants transferred $250,000 in Plan assets to Em Kol Chai, which had a balance of only $23,631.21.  On April 14, 2011, Em Kol Chai transferred $220,000 to the American Friends of Viznitz in Israel.  Em Kol Chai also transferred $10,000 and $32,000 to unknown entities on April 14, 2011.

   j. On June 7, 2011, Defendants transferred $90,000 in Plan assets to Bridgeport Manor, which had a balance of $221,057.57.  Between June 7 and 13, 2011, Bridgeport Manor transferred funds to a number of entities including, but not limited to, transfers of $170,000 and $17,000 to Bridgeport Health.  By June 13, 2011, Bridgeport Manor had a balance of only $273.28.  On June 16, 2011, Bridgeport Manor transferred $90,000 back to the Plan.

   k. On June 16, 2011, the Plan received $79,304.62 from an annuity investment.  On June 28, 2011, Defendants transferred $94,000 in Plan assets to Em Kol Chai, which had a balance of $157,927.22.  On June 28, 2011, Em Kol Chai transferred $230,000 to Bridgeport Manor.  On June 29, 2011, Bridgeport Manor transferred $201,950.11 to Bridgeport Health and $41,000 to an unknown entity.

   l. On September 12, 2011, the Plan received $68,396.86 from an annuity investment.  On September 20, 2011, Defendants transferred $41,000 to Em Kol Chai.

   m. On October 3, 2011, Defendants transferred $150,000 in Plan assets to Em Kol Chai, which had a balance of $20,023.27.  Bridgeport Manor also transferred $400,000 to Em Kol Chai.  On October 3, 2011, Em Kol Chai transferred $450,000 to Point Developers with an address of 1238 59th Street, Brooklyn, New York and $18,100 to an unknown entity.

   n. On October 12, 2011, Defendants transferred $15,000 in Plan assets to Em Kol Chai, which had a balance of $27,136.27.  Bridgeport Heath transferred an additional $5,000

to Em Kol Chai, which increased the balance to $47,136.27.  On October 12, 2011, Em Kol Chai transferred $47,000 to 299 Meserole Corp. with an address of 299 Meserole Street, Brooklyn, New York.

      o.    On June 15, 2012, the Plan received $79,304.62 from an annuity investment.  On June 27, 2012, Defendants transferred $85,000 in Plan assets to Em Kol Chai, which had a balance of only $8,627.31.  On June 27, 2012, Em Kol Chai transferred $85,000 to Bridgeport Manor.  On June 27, 2012, Bridgeport Manor transferred $60,000 to Bridgeport Health, which had a balance of negative (-) $15,816.22.  On June 27, 2012, Bridgeport Health paid $73,169.05 to the IRS.

      p.    On August 1, 2012, the Plan received $378,000 from the Sons of Israel for Computershare, Inc.  On August 2, 2012, Defendants transferred $380,000 in Plan assets to Em Kol Chai, which had a balance of negative (-) $379,206.81.  After receiving returned checks on August 2, 2012, Em Kol Chai transferred $360,000 to Stern on August 3, 2012.

      q.    On September 12, 2012, the Plan received $68,369.86 from an annuity investment.  On September 12, 2012, Defendants transferred $68,000 in Plan assets to Em Kol Chai, which had a balance of negative (-) $113,620.23 at the beginning of the day.

      r.    On February 25, 2013, Defendants transferred $245,000 in Plan assets to Em Kol Chai, which had a balance of $8,922.06.  On February 25, 2013, Em Kol Chai transferred $200,000 and $30,000 to Bridgeport Manor, which had a balance of $20.  On February 25, 2013, Bridgeport Manor made transfers to several entities including, but not limited to, transfers of $110,000, $100,000, $30,000, and $25,000 to Bridgeport Health.

**B.     Loan to Em Kol Chai**

24.     As stated above, during the pertinent period, Defendants transferred an undetermined amount of Plan assets to Em Kol Chai.

25.     Between January 31, 2011 and September 20, 2011, Defendants transferred approximately $2,600,000 in Plan assets directly to Em Kol Chai.  At the time of these transfers, there was no written contract or other agreement between the Plan and Em Kol Chai concerning the transfers of $2,600,000 in Plan assets.  Defendants did not obtain a written contract until October 1, 2011.

26.     On October 1, 2011, Markowitz executed a Promissory Note for a loan from the Plan to Em Kol Chai in the amount of $3,800,000.  The Promissory Note provided for an interest rate of 3.25%.  No collateral was provided for the loan.  The unsecured loan was payable in full by October 1, 2014.  The Promissory Note also provided for a two-year extension of the unsecured loan until October 1, 2016.

27.     Upon information and belief, banks in the Connecticut area are unlikely to extend a loan for $3,800,000 without collateral and at an interest rate of 3.25%.

28.     Upon information and belief, Defendants did not conduct any due diligence prior to agreeing to the unsecured loan including, but not limited to, determining whether Em Kol Chai was able to pay back the unsecured loan.

29.     After the Promissory Note was executed on October 1, 2011, Defendants transferred additional Plan assets to Em Kol Chai.  By February 25, 2013, Defendants had transferred approximately $3,613,000 in Plan assets directly to Em Kol Chai.  The total amount of Plan assets transferred to Em Kol Chai is undetermined.

9

30. As of September 30, 2013, the unsecured loan to Em Kol Chai represented more than 75% of Plan assets.

31. On September 18, 2014, Defendants approved a two-year extension of the unsecured loan until September 30, 2016 in a letter to Markowitz. Em Kol Chai did not provide any consideration for the two-year extension of the unsecured loan including, but not limited to, paying a higher interest rate or providing collateral for the unsecured loan. Stern signed for the extension as Trustee of the Plan.

32. Until February 22, 2015, Berg & Weingarten, CPA, PC ("Weingarten") provided accounting services to the Plan and served as the Plan's independent auditor. Weingarten advised Defendants that, among other things, their transfer of Plan assets to Em Kol Chai may be a prohibited transaction and not a proper investment, that the alleged loan to Em Kol Chai was not secured by collateral, and that the Plan cannot fall short of assets.

## V.   CLAIMS

33. By virtue of the acts described in paragraphs 20 through 32, Defendants caused Plan assets to inure to the benefit of the employer, in violation of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1). Specifically, Plan assets were transferred directly to the Plan Sponsor or were transferred indirectly to the Plan Sponsor for its use through Em Kol Chai. Examples of such transactions are set forth in paragraphs 23(a) through (d), (h), (j), (k), (o) and (r).

34. By virtue of the acts described in paragraphs 20 through 32, Defendants failed to discharge their fiduciary duties with respect to the Plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and defraying reasonable expenses of plan administration, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), by among other actions: (a) transferring Plan assets to a religious corporation in which Stern is involved; (b) transferring Plan assets without a written contract or agreement; (c) extending a loan of Plan assets without collateral, without conducting due diligence on credit worthiness, and for terms less favorable to the lender than banks in the area would have offered; (d) extending the term of the loan without any consideration; and, (e) directly and indirectly transferring Plan assets for the use of the Plan Sponsor and for the benefit of the fiduciaries.

35. By virtue of the acts described in paragraphs 24 through 32, Defendants failed to diversify the investments of the Plan to minimize the risk of large losses, in violation of ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C), which resulted in more than 75% of Plan assets being loaned to a religious corporation as set forth in paragraph 30.

36. By virtue of the acts described in paragraphs 20 through 32, Defendants caused the Plan to engage in transactions which they knew or should have known constituted transfers of Plan assets to, or use by or for the benefit of, party-in-interest Bridgeport Health and party-in-interest Stern, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), examples of which are set forth in paragraphs 23(a) through (r).

37. By virtue of the acts described in paragraphs 20 through 32, Defendants dealt with the assets of the Plan in their own interest or for their own account, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), examples of which are set forth in paragraphs 23(a) through (r).

38.     By virtue of the acts described in paragraphs 20 through 32, Defendants acted in transactions involving the Plan on behalf of parties whose interests were adverse to the interests of the Plan, its participants, and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), examples of which are set forth in paragraphs 23(a) through (r).

## VI.     PRAYER FOR RELIEF

WHEREFORE, the Secretary prays that this Court enter an order:

39.     Permanently enjoining Defendants from violating or participating in any violation of ERISA, including specifically §§ 403, 404, and 406, 29 U.S.C. §§ 1103, 1104, and 1106;

40.     Removing Stern as a fiduciary of the Plan and appointing an Independent Fiduciary for the Plan;

41.     Permanently enjoining Stern from serving as a fiduciary to any ERISA-covered plan in the future;

42.     Requiring Defendants to perform an accounting of all Plan transactions from January 3, 2011 to the present;

43.     Requiring Defendants to undo the prohibited transactions in which they engaged and restore to the Plan any and all losses incurred as a result of breaches of Defendants' fiduciary duties and the violations they committed or for which they are liable, including lost earnings and appropriate interest;

44.     Awarding the Secretary the costs of this action; and,

45.     Providing such other relief as is just and equitable.

> Respectfully submitted,
>
> M. Patricia Smith
> Solicitor of Labor
>
> Michael D. Felsen
> Regional Solicitor

*/s/*Celeste C. Moran
Celeste C. Moran (MA BBO No. 682937)
Senior Trial Attorney
moran.celeste@dol.gov

Nathan C. Henderson (MA BBO No. 657763)
Senior Trial Attorney
henderson.nathan.c@dol.gov

United States Department of Labor
Attorneys for Plaintiff

U.S. Department of Labor
Office of the Solicitor
JFK Federal Building, Room E-375
Boston, Massachusetts  02203

Telephone: (617) 565-2500
Facsimile: (617) 565-2142

Date: September 8, 2016