UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Milton Al Stewart, ACTING SECRETARY OF LABOR, United States Department of Labor, et al.<br>*Plaintiff*,<br><br>v.<br><br>BRIDGEPORT HEALTH CARE CENTER, INC., and CHAIM STERN<br>*Defendants*. | 3:16-CV-01519 (KAD)<br><br><br><br><br><br>MARCH 22, 2021 |

## ORDER FOR INJUNCTIVE RELIEF

Kari A. Dooley, United States District Judge:

Before the Court is the Acting Secretary of Labor's Motion to Temporarily Prohibit Healthcare Providers (or their Collection Agents) from Direct Billing and/or Commencing or Continuing Any Actions Against Participants and Beneficiaries, filed on January 26, 2021. (ECF No. 169.) Following a telephonic status conference held on February 9, 2021, the Secretary, on March 11, 2021, made a supplemental filing in support of his motion. For the reasons set for the below, the motion is GRANTED.

## BACKGROUND

The Secretary of Labor brought this action on September 8, 2016, as an enforcement action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"). This suit stemmed from alleged improprieties concerning employee benefits plans covered by the Act, and on July 10, 2020, the Court consolidated two related cases with this one.[1]

---

[1] Local 1522 of Council 4, Am. Fed. Of State County and Municipal Employees v. Bridgeport Health Care Center, Inc., No. 3:15-cv-01019 (KAD), and Acosta v. Bridgeport Health Care Center, Inc., No. 3:18-cv-00189 (KAD), were consolidated with this case. Defendant Bridgeport Health Care, Inc. is also involved in bankruptcy proceedings, No. 18-50488 in the Bankruptcy Court for the District of Connecticut. Finally, Defendant Stern was the subject of criminal proceedings related to the issues in this case in USA v. Stern, No. 3:20-cr-00007 (JCH).

The Court entered a Consent Judgment on July 13, 2020 that provided for the creation of a monetary settlement fund for the benefit of Bridgeport Health Care Center, Incorporated's ("BHCC") healthcare plan (the "Health Plan") and its participants and beneficiaries, as well as a mechanism for paying unpaid healthcare claims to or on behalf of participants and beneficiaries. Pursuant to the Consent Judgment, a Claims Administrator was appointed to distribute the settlement funds in an effort to satisfy the unpaid claims of the Health Plan's participants and beneficiaries. The Consent Judgment allows the Claims Administrator broad discretion to negotiate directly with healthcare providers to settle the unpaid claims and to directly reimburse participants of the Health Plan for certain out of pocket expenses. Before making any disbursements, however, the Claims Administrator is required to submit a disbursement plan for the approval of the consolidated Plaintiffs and BHCC, if it survives bankruptcy proceedings. The Claims Administrator has been at work notifying participants and beneficiaries of the Health Plan, among other initial steps toward distributing the funds, as evidenced by both the declaration of the Claims Administrator submitted with this motion and the Claims Administrator's invoices for work completed pursuant to the Consent Judgment.

While the Claims Administrator has been engaged in this work, many of the Health Plan's participants and beneficiaries have faced debt collection actions for money owed to medical providers. The Secretary provided details of those actions in its March 11 supplementary submission. Declarations from the Claims Administrator, an investigator for the Department of Labor, and counsel for a union involved in the litigation reveal that Health Plan participants and beneficiaries are facing numerous dunning notices, which have been delivered by both healthcare providers and collections agencies, and at least five lawsuits seeking to collect debts that might be satisfied through the Claims Administrator's work under the Consent Judgment. One participant

has received ten dunning notices from a healthcare provider, and another has received no fewer than seven from collections agencies and other debt collectors.

**DISCUSSION**

In its motion the Secretary urges the Court to provide injunctive relief that would protect the Plan's participants and beneficiaries from collections actions, to include the filing of adverse credit reports. The Secretary asserts that the Court has the authority to provide such injunctive relief pursuant to the All Writs Act, 28 U.S.C. § 1651,[2] and that the Anti-Injunction Act, 28 U.S.C. § 2283,[3] does not bar the Court from issuing injunctions as to pending state court proceedings.

The Court agrees that the All Writs Act authorizes a district court to provide the type of relief requested by the Secretary. "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977). Here, third parties such as the health care providers who seek payment and their collection agents both may frustrate the letter and purpose of the Consent Judgment and may otherwise interfere with the proper administration of justice, to wit, the work of the Claims Administrator. As described above, many of the Plan's participants and beneficiaries are facing collections actions arising from debts related to claims that should have been paid by the Health Plan. ERISA sought to ensure "the continued well-being and security of millions of employees and their dependents [that] are directly affected by" plans such as the one at issue, Pub. L. 93-406, § 2(a), 88 Stat. 829, 832, and injunctive relief would

---

[2] The Act, in the relevant subpart (a), provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

[3] The Act provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

protect those individuals from an unjust outcome resulting from alleged violations of the Act. Indeed, the Health Plan participants and beneficiaries are unquestionably innocent victims of the wrongdoing which resulted in their health care bills not being paid by the Health Plan in the first instance. Moreover, injunctive relief that prevents healthcare providers and collections agents from proceeding directly against the Health Plan participants and beneficiaries will ensure that the Consent Judgement can be administered without the frustration that might result from a race to the courthouse. *Cutler v. 65 Security Plan*, 831 F. Supp. 1008, 1023 (E.D.N.Y. 1993) ("Only by staying all other proceedings can the court achieve the federal policy of maximizing the assets of the Fund for the benefit of all creditors and preventing recovery from its assets in an inequitable manner."). *See also Acosta v. Riverstone Capital LLC*, No 19-778-MWF (MAAx), 2019 WL 2620725, at *13–*14 (C.D. Cal. May 1, 2019) (granting an injunction pursuant to the All Writs Act in an ERISA action); *Chao v. Int'l Brotherhood of Indus. Workers Health and Welfare Fund*, No. 98-CV-2041 (JS)(ARL), 2008 WL 4889110, at *2–*4 (E.D.N.Y. Oct. 31, 2008) (affirming a magistrate judge's grant of an All Writs Act Injunction); *In re Consolidated Welfare Fund ERISA Litigation*, 798 F. Supp. 125, 127–28 (S.D.N.Y. 1992) (granting an injunction pursuant to the All Writs Act in an ERISA action).

      The Court also agrees that this injunction is not barred by the Anti-Injunction Act because the injunction is necessary in aid of the Court's jurisdiction. Injunctions against state court actions may be sustained pursuant to this exception to the Anti-Injunction Act, even during *in personam* proceedings, where the proceeding before the court is "the virtual equivalent of a res over which the district court requires full control." *Wyly v. Weiss*, 697 F.3d 131, 138 (2d Cir. 2012) (quoting *In re Baldiwn United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985)). Such is the case here. Through the Consent Judgment, the Court is overseeing the distribution of a settlement fund designated to

satisfy outstanding claims against the Health Plan participants and beneficiaries. Any state court action which would, in effect, entitle the judgment holder to a portion of the settlement fund would prevent the Court from exercising its jurisdiction to make equitable and proportionate distributions from the limited funds available. *See Cutler*, 831 F. Supp. at 1023.[4]

**CONCLUSION & RELIEF**

For the reasons set forth above, the Secretary's motion is GRANTED. Wherefore, it is hereby:

**ORDERED** that upon notice, health care providers (or their collection agents) are prohibited from direct billing and/or commencing or continuing any actions against participants and beneficiaries of the Bridgeport Health Care Center, Inc. Benefit Plan (the "Health Plan"), including but not limited to, making or continuing to make adverse credit reports, related to unpaid health claims for eighteen months from the date of this Order. This injunction applies to unpaid health claims from February 4, 2013 (billing date) through July 4, 2018 (service date), excluding co-pays, coinsurance, and deductibles; and it is further

**ORDERED** that, if the distribution of funds is not completed with eighteen months of this order, the Secretary may move for an extension of this injunction; and it is further

**ORDERED** that the Secretary shall notify the Court when the administration of the funds in the Consent Judgment and Order is completed; and it is further

**ORDERED** that the Claims Administrator of the Health Plan, appointed pursuant to the Consent Judgment and Order, shall transmit this Order to healthcare providers (or their collections agents) known to it as currently pursuing claims against participants and beneficiaries, and known

---

[4] Like the *Cutler* court, this Court notes that the Department of Labor's presence in this case "enhance[s]" the Court's authority to stay state court proceedings. *Cutler*, 831 F. Supp. at 1023. However, the Court does not rely solely on the Secretary's presence in the case as the basis for the Court's conclusion.

participants and beneficiaries. The Claims Administrator shall identify the applicable participant and/or beneficiary to the healthcare provider (or collections agent) when transmitting the Order. The Claims Administrator shall keep a record of the date, relevant participant and beneficiary, transmittal mode, and name and address of all entities and individuals to whom it sends this Order. Upon the Court's request, the Claims Administrator shall issue a certification providing such information to the Court; and it is further

**ORDERED** that this Order shall not apply to any actions, whether legal, equitable, or administrative in nature, brought by the Secretary or any other federal governmental authority (including, but not limited to, those responsible for criminal matters) and any state or state agency. This Order does not apply to any agency or department responsible for criminal matters and will not affect or resolve any criminal matters or criminal liability. Nothing in this Order will affect the rights of any victims under any federal criminal statute; and it is further

**ORDERED** that any enjoined recipient of such notice may, within ten days of receipt of this Order file an objection to this Order with this Court; and it is further

**ORDERED** that this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of March 2021.

                                                /s/ Kari A. Dooley
                                               KARI A. DOOLEY
                                               UNITED STATES DISTRICT JUDGE